UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DEMING HOSPITALITY, LLC,

                                                                 No. 11-12-13377 TA

      Debtor.

## MEMORANDUM OPINION

This opinion addresses the argument of the State Bank of Texas ("SBT") and the United States Small Business Administration ("SBA") that the debtor's Amended Disclosure Statement, filed March 1, 2013, doc. 95 (the "Disclosure Statement") should not be approved because the Debtor's reorganization plan (the "Plan") is facially unconfirmable. The alleged defects in the plan are:

    1.     The separate classification of SBA's deficiency claim violates 11 U.S.C. § 1122(a);

    2.     The disparate treatment of SBA's deficiency claim violates § 1129(b)(1)'s prohibition against unfair discrimination;

    3.     The general unsecured claims are "artificially impaired;"

    4.     The classification and/or voting rights of Choice Hotels International, Inc. ("Choice Hotels") and New Mexico Taxation and Revenue ("TRD") are improper; and

    5.     The Plan violates the absolute priority rule.

At a hearing held February 20, 2013, the Court set a briefing schedule on the Plan's alleged facial unconfirmability. SBT and SBA filed briefs, Debtor responded, and a hearing was held March 11, 2013.

                                                       I.     THE PLAN

Debtor's Plan, filed January 7, 2013, provides for eight classes of claims: Four classes of secured claims (SBT, SBA, TRD, and Luna County); a class for Choice Hotels; a class for non-priority unsecured claims other than the SBA's deficiency claim; a class for SBA's deficiency claim; and an equity class. The Plan provides, in pertinent part:

1. Class 2 Secured (SBA): SBA has a junior lien on Debtor's real and personal property, securing a debt of about $1,500,000. SBA's claim is treated as wholly unsecured and reclassified as a Class 7 unsecured claim. SBA's lien is stripped;

2. Class 4 Secured (TRD): TRD has a junior lien on Debtor's real and personal property, securing unpaid gross receipts tax debt of about $27,800. TRD's claim is treated as wholly unsecured, and therefore as an unsecured priority tax claim;

3. Class 5 (Choice Hotels): Choice Hotels is the franchisor under a certain Licensing Agreement, an executory contract with a $67,000 pre-petition arrearage. Debtor proposes to assume the contract and pay Choice Hotels $50,000 in full satisfaction of the arrearage;

4. Class 6 (General Unsecured Claims): General unsecured claims are to be paid 75% of their claim amounts within 30 days of the effective date;

5. Class 7 (SBA Deficiency Claim): SBA is to be paid $25,000 on its $1,500,000 deficiency claim, within 30 days of the effective date; and

6. Class 8 (Equity Interests): Equity interests would retain their equity, in exchange for investing $150,000 of "new value" into the Debtor.

SBA and SBT stated in their briefs and in open court that they would vote to reject, and would object to, the Plan.

II. THE COURT HAS DISCRETION TO DISAPPROVE THE DISCLOSURE STATEMENT IF THE PLAN IS UNCONFIRMABLE ON ITS FACE

It is within the Court's discretion to deny approval of a disclosure statement if the accompanying plan is unconfirmable on its face. *See In re American Capital Equipment, LLC,* 688 F.3d 145, 154 (3d Cir. 2012) (citing *Norton Bankr. Law Practice*, the court stated that "[i]t appears to be within the discretion of the bankruptcy court to withhold approval of a disclosure statement if

the accompanying plan is unconfirmable"); *Alexander Properties, LLC v. Patapsco Bank,* 883 F. Supp. 2d 552, 554, 560 (D. Md. 2012) (bankruptcy court correctly declined to approve debtor's disclosure statement because the plan was not confirmable); *In re Arnold,* 471 B.R. 578, 585 (Bankr. C.D. Cal. 2012) (appropriate to deny approval of disclosure statement where plan is unconfirmable on its face); *In re GSC, Inc.,* 453 B.R. 132, 157, n. 27 (Bankr. S.D.N.Y. 2011), citing *In re Quigley Co., Inc.,* 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) (same); *In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) (same).

### III. CLASSIFICATION OF SBA'S DEFICIENCY CLAIM

SBT and SBA argue that the separate classification of SBA's deficiency claim from other unsecured claims violates § 1122(a).[1]

There is no controlling Tenth Circuit law on whether substantially similar claims may be separately classified. As stated in *In re City of Colorado Springs Spring Creek General Imp. Dist.,* 187 B.R. 683, 687 (Bankr. D. Colo. 1995) ("*Spring Creek*"):

> The express language of § 1122(a) imposes only one requirement—that claims in a given class be substantially similar to each other. There is no requirement that all substantially similar claims be placed in the same class nor is there a prohibition against classifying substantially similar claims separately. Almost all courts interpreting § 1122(a) recognize that it does not prohibit separate classification of similar claims, yet many courts, including seven Circuit Courts of Appeal, have augmented § 1122(a) to impose restrictions on a plan proponent's ability to separate similar claims.[FN3]
>
>> FN3. The Second, Third, Fourth, Fifth, Sixth, Eighth and Eleventh Circuit Courts of Appeal have imposed such restrictions. *See, e.g., Boston Post Road Ltd. Partnership v. F.D.I.C. (In re Post Road Ltd. Partnership),* 21 F.3d 477, 483 (2nd Cir.1994); *John Hancock Mut. Life Ins. Co. v. Route 37 Business*

---

[1] SBT also argues that it is improper to classify SBA's claim twice, first as a secured claim (Class 2) and then as a wholly unsecured deficiency claim (Class 7). The Court is not particularly troubled by this, since under Debtor's proposal SBA would only be allowed to vote once (as a Class 7 unsecured creditor), and the classification scheme makes Debtor's proposed treatment of SBA's claim clear.

-3-

*Park Assoc.,* 987 F.2d 154, 159–60 (3d Cir.1993); *Lumber Exch. Bldg. Ltd. Partnership v. Mutual Life Ins. Co. (In re Lumber Exch. Bldg. Ltd. Partnership),* 968 F.2d 647, 649 (8th Cir.1992); *Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),* 961 F.2d 496, 502 (4th Cir.1992); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (Matter of Greystone III Joint Venture),* 995 F.2d 1274, 1278–1279 (5th Cir.1991); *Olympia & York Florida Equity Corp. v. Bank of N.Y. (In re Hollywell Corp.),* 913 F.2d 873, 880 (11th Cir.1990); *Teamsters Nat'l Freight Indus. Negotiating Committee v. U.S. Truck Co. (In re U.S. Truck Co.),* 800 F.2d 581, 586 (6th Cir.1986).

The main judicial gloss on § 1122(a) is that the subsection prohibits a debtor from separately classifying similar claims to "gerrymander" a consenting class:

> When objections to classification under § 1122(a) arise, courts are usually presented with allegations that the plan proponent separately classified similar claims only to ensure acceptance by at least one class of impaired claims as required by § 1129(a)(10). Such manipulation is viewed as an abuse of Chapter 11. In the oft cited case of *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (Matter of Greystone III Joint Venture),* 995 F.2d 1274 (5th Cir. 1991), the Fifth Circuit held that "one clear rule" has emerged from the otherwise muddled § 1122 case law: "[T]hou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan". *Greystone,* 995 F.2d at 1279.

*Spring Creek,* 187 B.R. at 687-88. *See also In re SunCruz Casinos, LLC,* 298 B.R. 833, 837 (Bankr. S.D. Fla. 2003) (collecting 19 cases); *In Dean,* 166 B.R. at 953.

If a creditor objects to the classification scheme on gerrymandering grounds, most courts require the plan proponent to justify the classification. *See In re Dean,* 166 B.R. at 949 (Bankr. D.N.M. 1994) (debtor must demonstrate reasons apart from gerrymandering to separately classify); *In re Barakat,* 99 F.3d 1520, 1526 (9th Cir. 1996), *cert. denied,* 520 U.S. 1143 (1997) (business or economic justification required); *In re Tucson Self-Storage, Inc.,* 166 B.R. 892, 898 (9th Cir. BAP 1994) (placed justification burden on debtor); *In re Heritage Organization, LLC,* 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) (discussing when separate classification justified). *See also*

-4-

*Spring Creek*, 187 B.R. at 683, n. 4 (collecting cases).

A few courts have been reluctant to read anti-gerrymandering (or other) restrictions into § 1122(a). *See, e.g., Spring Creek,* 187 B.R. at 689; *In re ZRM–Oklahoma Partnership,* 156 B.R. 67, 70 (Bankr. W.D. Okla. 1993); *Principal Mut. Life Ins. Co. v. Baldwin Park Towne Center, Ltd. (In re Baldwin Park Towne Center, Ltd.),* 171 B.R. 374, 377 (Bankr. C.D. Calif. 1994); *In re Dow Corning Corp.*, 244 B.R. 634, 650 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000) (citing *ZRM-Oklahoma*). These courts argue that the restrictions imposed are not found in the language of § 1122(a), which is plain and unambiguous. They also argue that reading such restrictions into § 1122(a) is unnecessary, given the safeguards found in § 1129, e.g. the prohibition against "unfair discrimination" in § 1129(b), the "fair and equitable" requirement of § 1129(b), and the "good faith" requirement of § 1129(a)(3).

The Court will adopt the "one clear rule" against gerrymandering to satisfy § 1129(a)(10), whether the source of the rule is § 1122(a) or § 1129. Since the plan proponent has the burden of proving compliance with § 1129 in any event,[2] the Court will place the burden on the plan proponent to justify any separate classification of substantially similar claims, if a party in interest objects on gerrymandering grounds.

If the plan proponent carries its burden of showing that substantially similar claims were not separately classified to gerrymander a consenting class of impaired claims, the Court will make no further inquiry into whether the separate classification of similar claims violates § 1122(a); any

---

[2] S*ee, e.g., Heartland Fed. Sav. & Loan Assn. v. Briscoe Enter., Ltd., II (In re Briscoe Enter., Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993); *Beal Bank, S.S.B. v. Waters Edge Ltd. Partnership*, 248 B.R. 668, 690 (D. Mass. 2000), citing *Landing Assocs. Ltd.,* 157 B.R. 791, 818 (Bankr. W.D. Tex. 1993).

remaining confirmation issues would be addressed under § 1129.

Analyzing separate classification objections in this way protects creditors from gerrymandering and/or other improper classification attempts, while not taking undue liberties with the text of § 1122(a).

Using the foregoing framework, the Court concludes that the Plan is not facially unconfirmable because it classifies SBA's deficiency claim separately. Debtor has the burden of showing that SBA's deficiency claim was not separately classified to gerrymander a consenting class or for some other improper purpose, and should be given the opportunity to do so. It could well be SBA's deficiency claim was classified separately to gerrymander the vote, but the Court will not rule on the issue until Debtor is given the opportunity to present evidence to explain its classification scheme.

## IV. DISPARATE TREATMENT OF SBA'S DEFICIENCY CLAIM

Under the Plan, general unsecured creditors would be paid 75% of their claims within 30 days of the Plan's effective date. In contrast, by the same deadline SBA would receive a lump sum payment of $25,000 on its approximate $1,500,000 claim, or about 1.67%. SBT and SBA argue that this disparate treatment violates 11 U.S.C. § 1129(b)(1)'s prohibition against "unfair discrimination."[3]

There is no controlling Tenth Circuit authority on what "discriminate unfairly" means. Other courts have developed a variety of tests to distinguish between "fair" and "unfair" dis-

---

[3] Section 1129(b)(1) provides that "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of

-6-

crimination. Some have followed *In re Aztec Co.,* 107 B.R. 585, 590 (Bankr. M.D. Tenn. 1989), and considered (1) whether the discrimination is supported by a reasonable basis; (2) whether the debtor can confirm and consummate a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) the treatment of the classes discriminated against. *See, e.g., In re Riviera Drilling & Exploration Co.,* 2012 WL 6719591 (Bankr. D. Colo. 2012); *Ownby v. Jim Beck, Inc. (In re Jim Beck, Inc.)*, 214 B.R. 305, 307 (W.D. Va. 1997), *aff'd,* 162 F.3d 1155 (4th Cir. 1998); *In re Sea Trail Corp.*, 2012 WL 5247175 (Bankr. E.D.N.C. 2012).

A refinement of the test changes the fourth factor to "the degree of the discrimination is directly related to the basis or rationale for the discrimination." *In re Ambanc La Mesa L.P.,* 115 F.3d 650, 656 (9th Cir.1997), *cert. denied,* 522 U.S. 1110 (1998); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 157 (Bankr. D.N.J. 2010)*, In re Hawaiian Telcom Communications, Inc.,* 430 B.R. 564, 605 (Bankr. D. Haw. 2009); *In re American Trailer and Storage, Inc.,* 419 B.R. 412, 443 (Bankr. W.D. Mo. 2009); *In re Snyders Drug Stores, Inc.,* 307 B.R. 889, 894–95 (Bankr. N.D. Ohio 2004); *In re Internet Navigator Inc.,* 289 B.R. 128, 132 (Bankr. N.D. Iowa 2003).

A condensed version of this test is whether there is a reasonable basis for the discrimination and whether the debtor can confirm a plan without it. *See In re Lernout & Hauspie Speech Products, N.V.,* 301 B.R. 651, 660 (Bankr. D. Del. 2003), *aff'd,* 308 B.R. 672 (D. Del. 2004), citing *In re Ambanc La Mesa*; *In re Crosscreek Apartments, Ltd.,* 213 B.R. 521, 537 (Bankr. E.D. Tenn. 1997) ("at a minimum there must be a rational or legitimate basis for the discrimination and the discrimination must be necessary for the reorganization").

---

such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

Other courts have adopted a "rebuttable presumption test" proposed by Professor Bruce Markell.[4] *See In re Tribune Co.*, 472 B.R. 223, 241 (Bankr. D. Del. 2012); *In re Armstrong World Ind., Inc.,* 348 B.R. 111, 121 (D. Del. 2006); *In re Unbreakable Nation Co.,* 437 B.R. 189, 202 (Bankr. E.D. Pa. 2010), *In re Quay Corp. Inc.,* 372 B.R. 378, 386 (Bankr. N.D. Ill. 2007), *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 231 (Bankr. D.N.J. 2000), *In re Dow Corning Corp.,* 244 B.R. 696, 701–03 (Bankr. E.D. Mich. 1999). For the plan proponent to rebut the presumption, it must show that outside of bankruptcy, the dissenting class would receive less than the class receiving a greater recovery, or that the alleged preferred class had infused new value which offset its gain. *In re Riviera Drilling,* 2012 WL 6719591, at *7, citing *In re Dow Corning Corp.*, 244 B.R. 696.

Regardless of the standard used to determine unfair discrimination, courts agree that if the treatment of substantially similar claims is "grossly disparate," it is very difficult for the plan proponent to show "fair" discrimination. *See Tribune,* 472 B.R. at 243 (defining grossly disparate as a difference of 50% or more in the recovery (e.g. 10% versus 60% recovery), and saying that courts have "roundly rejected plans" proposing such treatment); *In re Sea Trail,* 2012 WL 5247175 at *8 ("A crucial distinction . . . between cases in which plans have been determined to be

---

[4] "I propose that a court should not confirm a nonconsensual plan, even if it provides fair and equitable treatment for all classes, when there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution. . . . In either case—disparity of recovery or disparity of risk—the plan proponent can rebut the presumption of unfairness by proving that the difference in treatment is attributable to differences in the prepetition status of the creditors. In the case of a difference in the present value of the recovery, the presumption may also be overcome by a demonstration that contributions will be made by the assenting classes to the reorganization, and that these contributions are commensurate

unfairly discriminatory and those that have not is the magnitude of the difference in the amount of recovery between similarly-situated classes); *In re Unbreakable Nation Co.,* 437 B.R. 189, 203 (Bankr. E.D. Pa. 2010) (apparently adopting the "grossly disparate" rule, but finding that the distribution proposed was not materially different); *In re Greate Bay Hotel,* 251 B.R. at 231 (grossly disparate treatment is difference of 50% or more; collects cases denying confirmation because of such treatment); *In re Crosscreek Apartments, Ltd.,* 213 B.R. at 537-38; *In re Cranberry Hill Assocs., L.P.,* 150 B.R. 289, 290-91 (Bankr. D. Mass. 1993); *In re Tucson Self-Storage, Inc.,* 166 B.R. at 898 (confirmation denied when plan proposed to pay trade creditors 100% and deficiency claim 10%); *In re Aztec Co.*, 107 B.R. at 591 (plan discriminated unfairly by paying insider claims nearly in full while paying noninsider claims a de minimus amount); *In re Caldwell,* 76 B.R. 643, 646 (Bankr. E.D. Tenn. 1987) (confirmation denied where credit card debt was to receive 100%, while other unsecured creditors were to receive 22.7%); *In re Barney & Carey Co.*, 170 B.R. 17 (Bankr. D. Mass 1994) (denying confirmation where deficiency claim was to be paid 100%, while general unsecured claims were to receive 15%).

In *In re Crawford*, 324 F.3d 539, 542 (7th Cir. 2003), Judge Posner, reviewing whether a Chapter 13 plan discriminated unfairly,[5] reviewed tests developed in Chapter 13 practice, including one very similar to the *Aztec/Ambanc La Mesa* test. He was critical of the test,[6] and stated:

> We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do

---

with the different treatment. In such cases, while discrimination exists, it is not unfair." Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11,* 72 Am. Bankr. L.J. 227, 249-250 (1998).
[5] Section 1322(b)(1) also prohibits claim classifications that "discriminate unfairly."
[6] Judge Posner stated: "With respect, this test is empty except for point 2, which does identify an important factor bearing on the reasonableness of a classification . . . ." 324 F.3d at 542.

-9-

> better than to instruct the first-line decision maker, the bankruptcy judge, to seek a
> result that is reasonable in light of the purposes of the relevant law, which in this
> case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless
> it is unreasonable (an abuse of discretion).

324 F.3d at 542. *See also In re Pracht*, 464 B.R. 486, 491 (Bankr. M.D. Ga. 2012) (citing *Crawford* and reviewing the attempts courts have made to formulate tests for "unfair" discrimination); *In re Orawsky*, 387 B.R. 128, 141 (Bankr. E.D. Pa. 2008) (reviewing the various tests used in Chapter 13).

The Court agrees with *Crawford* that none of the tests (in this case for Chapter 11) is helpful or tailored enough to be adopted. The *Aztec/Ambanc La Mesa* test, for example, while somewhat helpful, is general and vague (e.g. using "reasonable basis" and "good faith"), and therefore gives insufficient guidance. Judge Markell's "rebuttable presumption" test, on the other hand, seems restrictive, and could exclude treatment that is fair.

In the Court's opinion the only helpful general rules are (1) if the disparate treatment is "grossly disproportionate" the plan proponent will have a heavy burden to justify the treatment, and (2) if a plan is feasible and could be confirmed without materially disparate treatment, then the burden on the plan proponent to justify disparate treatment will be particularly heavy. Apart from these rules, the determination whether any discriminatory treatment is "unfair" will be left to the sound discretion of the Court.

Here, there is a gross disparity between the proposed dividend to non-priority unsecured creditors (75%) and the proposed dividend to SBA (1.67%).[7] In addition, it appears it may be possible to draft a plan that would not discriminate against the SBA (e.g. a plan that treats all

-10-

unsecured claims the same, which SBA would agree to vote for). Thus, while the current Plan is not unconfirmable on its face, the Debtor will carry a heavy burden to justify SBA's disparate treatment.

IV. ARTIFICIAL IMPAIRMENT OF GENERAL UNSECURED CLAIMS

The claims pool for Class 6 totals $10,554.73. Disclosure Statement, p. 18. Under the Plan, $7,916.04 would be paid to Class 6 creditors. The Debtor does not say why Class 6 is not paid in full, when equity proposes to infuse $150,000 into the Debtor within 15 days of the Effective Date. SBT argues that the Plan "artificially" impairs Class 6 claims.

Before a plan proponent can attempt to "cram down" a plan on a nonconsenting impaired class (here, SBT and SBA), at least one impaired class of claims must vote in favor of the plan (here, Class 6). 11 U.S.C. §§ 1129(a)(10) and/or 1129(b)(1). "Artificial" impairment occurs when the plan proponent causes the class to be impaired without an economic justification for doing so, for the apparent purpose of obtaining the required vote of an impaired claim. *See In re Dunes Hotel Associates,* 188 B.R. 174, 184-89 (Bankr. D.S.C. 1995). Artificial impairment has generally been held to violate §§ 1129(a)(10) or § 1129(a)(3) (good faith). *In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426, at *15 (Bankr. D.N.M. 2012), citing *In re Village at Camp Bowie I, L.P.,* 454 B.R. 702, 708–09 (Bankr. N.D. Tex. 2011) and *In re Quigley Co., Inc.,* 437 B.R. 102, 126 (Bankr. S.D.N.Y. 2010). Regardless of the Code section, the practice generally is condemned. *In re Windsor on the River Associates, Ltd.,* 7 F.3d 127, 132 (8th Cir. 1993); *Cottonwood Corners, at *15*; *In re Dean*, 166 B.R. 949, 954 (Bankr. D.N.M. 1994).

---

[7] In other words, other non-priority unsecured creditors are preferred over the SBA at a rate of almost 45 to 1.

-11-

Like the issues of separate classification and disparate treatment, there may be legitimate business reasons for Debtor's proposed treatment of Class 6. If there is no economic justification for failing to pay Class 6 in full after confirmation rather than the proposed 75%, then the impairment of the class likely would be "artificial" and impermissible.

Because Debtor should be given a chance to present evidence to explain the reason for Class 6's treatment, the treatment does not render the Plan facially unconfirmable.

V. CLASSIFICATION OF CHOICE HOTEL'S CONTRACT TREATMENT

The Plan sets out the treatment of Choice Hotels' executory franchise agreement in Class 5. Plan, p. 7. The Debtor proposes to assume the agreement as part of the Plan. *Id.* In the treatment of Class 5, Debtor proposes to cure its pre-petition payment default under the agreement (about $67,000) by paying $50,000 within 30 days of the Plan's effective date.

The Court has no objection to Debtor attempting to negotiate a discount with Choice Hotels. Nevertheless, counterparties to assumed executory contracts are not "classified" and are not entitled to vote, even if there is a pre-petition arrearage that must be cured. *See In re Greystone III Joint Venture,* 995 F.2d 1274, 1281 (5th Cir. 1991), *cert. denied,* 506 U.S. 821 (1992) ("A party to a lease is considered a "creditor" who is allowed to vote, 11 U.S.C. § 1126(c), only when the party has a claim against the estate that arises from *rejection* of a lease") (emphasis in original); *In re Mount Carbon Metropolitan Dist.,* 242 B.R. 18, 38-9 (Bankr D. Colo. 1999) (executory contract holders whose contracts are to be assumed are not entitled to vote; such holders whose contracts will be rejected are entitled to vote as unsecured creditors); *In re Motel Associates of Cincinnati,* 50 B.R. 196, 200 (Bankr. S.D.N.Y. 1985) (implying that, subject to proper notice to the franchisor, the debtor can disallow the franchisor's plan vote because the debtor proposes to assume the

franchise agreement so the franchisor will not have a claim).  *See generally* 11 U.S.C. § 1123(a)(1).

So long as Debtor and Choice Hotels understand that Choice Hotels may not vote on the Plan, the classification of Choice Hotels' executory contract interest probably is harmless error that can be corrected by a Plan amendment or in a confirmation order.  The classification does not render the Plan unconfirmable on its face.

VI. TREATMENT OF TRD CLAIM

SBT also objects to the classification of TRD's claim.  TRD filed lien notices pre-petition, securing its gross receipts tax claim.  Debtor, while classifying TRD's claim as a secured claim, takes the position that the value of the liened property is less than the amount of other claims secured by prior liens thereon, so TRD is unsecured.  Debtor therefore treats TRD as holding an unsecured priority tax claim.

Priority tax claims are not classified and may not vote.  *See* § 1123(a)(1) (classified claims do not include §507(a)(8) priority tax claims); *In re Bryson Properties, XVIII,* 961 F.2d 496, 501 (4th Cir. 1992) ("[w]e agree that priority tax claimants, which receive preferential treatment under the Code (*see* 11 U.S.C. § 1129(a)(9)(C)), are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down"); *In re Perdido Motel Group, Inc.,* 101 B.R. 289, 293 (Bankr. N.D. Ala. 1989) (same); *In re Winters,* 99 B.R. 658, 663-64 (Bankr. W.D. Pa. 1989) (same).  There is nothing wrong with classifying TRD's claim, to the extent the claim is secured.  On the other hand, since Debtor's position is that TRD's claim is not secured, the claim should not be classified and should not be able to vote.

Like the Choice Hotels classification, Debtor's classification of TRD's claim is harmless

error that can be fixed by a Plan amendment or in a confirmation order, and does not make the Plan facially unconfirmable.

## VII. ABSOLUTE PRIORITY RULE

SBT and SBA object that the Plan violates the "absolute priority rule" found in § 1129(b)(2)(B) and in § 1129(b)'s "fair and equitable" requirement.[8] The Plan proposes that existing equity holders will invest new capital of $150,000 in exchange for retention of their equity. Plan, p. 8. This proposal is an attempt to comply with the "new value" exception to the absolute priority rule. *See Bank of America National Trust and Sav. Assn. v. 203 North LaSalle Street Partnership,* 526 U.S. 434 (1999) (discussing at length, without explicitly approving, the "new value" exception). *LaSalle* went on to say that the best way to determine the proper amount of "new value" is to expose the new equity to a market:

> Under a plan granting an exclusive right, making no provision for competing bids or competing plans, any determination that the price was top dollar would necessarily be made by a judge in bankruptcy court, whereas the best way to determine value is exposure to a market.

526 U.S. at 457.

> Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity, is a question we do not decide here. It is enough to say, assuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).

526 U.S. at 458. From the above, it is clear from that" when a reorganization plan is proposed by a debtor during the exclusive period and gives old equity holders the opportunity to purchase eq-

---

[8] *See, e.g. In re Maharaj*, 681 F.3d 558, 560 (4th Cir. 2012) (discussing history of the absolute priority rule and the "fair and equitable" requirement).

-14-

uity in the reorganized debtor, *actual* market testing is required of the stock in the reorganized debtor." *H.G. Roebuck & Son, Inc. v. Alter Communications, Inc.,* 2011 WL 2261483, at *7 (D. Md. 2011), citing *LaSalle*, 526 U.S. at 457 (emphasis in the *Roebuck* opinion).

The Plan does not comply with this requirement. Since it is clear that SBA will not accept the Plan or be paid in full, the lack of *LaSalle*-mandated market testing renders the Plan nonconfirmable. *See In re Castleton Plaza, LP,* 707 F.3d 821, 822 (7th Cir. 2013) (reversing the bankruptcy court's plan confirmation order, the Seventh Circuit ruled that under *LaSalle,* if unsecured creditors are not paid in full and reject the plan, an insider of the equity holder cannot inject new value and obtain ownership; the debtor must expose the new equity to some type of competitive bidding process); *In re GAC Storage El Monte, LLC*, 2013 WL 1124074, at *17 (Bankr. N.D. Ill. 2013) (plan has to provide an opportunity for competition); *In re Graham & Currie Well Drilling Co., Inc.,* 2011 WL 5909632, at *1 (Bankr. E.D.N.C. 2011) (appropriate value of new equity must be determined by the market); *In re RIM Development, LLC,* 448 B.R. 280, 292 (Bankr. D. Kan. 2010) (failure to provide for *LaSalle*-type "competition or market valuation" renders plan "patently unconfirmable").

Debtor argues that it is too soon to consider *LaSalle's* requirements because Debtor may still be able to convince SBA to vote in favor of the Plan, in which case no such auction would be required. That is theoretically true, but SBA's opposition to the current Plan is strong enough, and Debtor's treatment of SBA's claim is harsh enough, for the Court to conclude that the Plan must comply with LaSalle's market/competition requirements, whatever they might be,[9] to proceed. It

---

[9] The Court is not ruling on what type of market exposure and/or competitive process would satisfy *LaSalle*.

-15-

would be permissible to draft a plan that proposed *LaSalle*-compliant treatment if and only if an impaired class of unsecured claims rejected the Plan.

VIII. CONCLUSION

The Court will not deny approval of the Disclosure Statement because of the separate classification of SBA's unsecured deficiency claim, the grossly disparate treatment of SBA's deficiency claim, or the impairment of the general unsecured claims. Although it appears Debtor will have an uphill battle convincing the Court that these Plan provisions comply with §§ 1122(a) and/or 1129, the Debtor should be allowed an opportunity to provide supporting evidence and argument.

Similarly, the Court will not disapprove the Disclosure Statement because of the "classification" of Choice Hotels and TRD, so long as Debtor, Choice Hotels, and TRD understand that the classes are nonvoting.

The Court will, however, disapprove the Disclosure Statement because, given SBA's commitment to vote against and object to the Plan in its current form, the Plan violates *LaSalle's* prohibition against "providing junior interest holders with exclusive opportunities free from competition and without the benefit of market valuation."

An appropriate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered on docket: April 5, 2013

Copies to:

George M. Moore
3800 Osuna Road, NE, Ste. 2
Albuquerque, NM 87109

Trey Arvizu
P.O. Box 1479
Las Cruces, NM 88004

Marta Nesbitt
P.O. Box 2206
Albuquerque, NM 87103

Alice N. Page
P.O. Box 608
Albuquerque, NM 87103